UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,                    :
                                             :
                                             :
                Plaintiff,                   :
                                             :
        v.                                   :        Civil Action No. 14-cv-13804-GAO
                                             :
BOSTON AND MAINE CORPORATION                 :
and                                          :
MASSACHUSETTS BAY TRANSPORTATION             :
AUTHORITY,                                   :
                                             :
                Defendants.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | BACKGROUND | 3 |
| II | JURISDICTION | 5 |
| III. | PARTIES BOUND | 5 |
| IV. | DEFINITIONS | 5 |
| V. | GENERAL PROVISIONS | 9 |
| VI. | PERFORMANCE OF THE WORK BY THE APPROPRIATE SETTLING DEFENDANT | 11 |
| VII. | REMEDY REVIEW | 14 |
| VIII. | QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS | 15 |
| IX. | ACCESS AND INSTITUTIONAL CONTROLS | 16 |
| X. | REPORTING REQUIREMENTS | 20 |
| XI. | EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES | 21 |
| XII. | PROJECT COORDINATORS | 22 |
| XIII | PERFORMANCE GUARANTEE | 23 |
| XIV. | CERTIFICATION OF COMPLETION | 28 |
| XV. | EMERGENCY RESPONSE | 30 |
| XVI. | PAYMENTS FOR RESPONSE COSTS | 31 |
| XVII. | INDEMNIFICATION AND INSURANCE | 33 |
| XVIII. | FORCE MAJEURE | 34 |
| XIX. | DISPUTE RESOLUTION | 36 |
| XX | STIPULATED PENALTIES | 38 |
| XXI. | COVENANTS BY PLAINTIFF | 40 |
| XXII. | COVENANTS BY SETTLING DEFENDANTS | 43 |
| XXIII. | EFFECT OF SETTLEMENT; CONTRIBUTION | 44 |
| XXIV. | ACCESS TO INFORMATION | 45 |
| XXV. | RETENTION OF RECORDS | 46 |
| XXVI. | NOTICES AND SUBMISSIONS | 47 |
| XXVII. | RETENTION OF JURISDICTION | 48 |
| XXVIII. | APPENDICES | 48 |
| XXIX. | COMMUNITY RELATIONS | 49 |
| XXX. | MODIFICATION | 49 |
| XXXI. | LODGING AND OPPORTUNITY FOR PUBLIC COMMENT | 49 |
| XXXII. | SIGNATORIES/SERVICE | 50 |
| XXXIII. | FINAL JUDGMENT | 50 |

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

## I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.      The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at Operable Unit 4 of the Iron Horse Park Superfund Site in Billerica, Massachusetts, together with accrued interest; and (2) performance of response actions by the defendants at Operable Unit 4 of the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the Commonwealth of Massachusetts (the "State" or "Commonwealth") on December 17, 2010 of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for Operable Unit 4 of the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree. The State has not participated in the negotiation of, and is not a party to, this Consent Decree.

D.      In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the federal and State natural resource trustees on December 17, 2010, of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.      The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 21, 1984, 49 Fed. Reg. 37070.

G.      In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Site, EPA commenced in September 1985 a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

H.      EPA completed a Phase IA Remedial Investigation ("RI") Report in September 1987. As a result of the Phase IA RI, EPA divided the Site into three Operable Units.

I.      A Consent Decree governing the remediation of the B&M Lagoons, the first Operable Unit at the Site, was entered by the United States District Court for the District of Massachusetts on September 13, 1990.

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

J.      A Consent Decree governing the remediation of the Shaffer Landfill, the second Operable Unit at the Site, was entered by the United States District Court for the District of Massachusetts on April 17, 2001.

K.      A Consent Decree governing the remediation of Operable Unit 3 was entered by the United States District Court for the District of Massachusetts on July 2, 2008.

L.      In 1997, EPA completed an RI Report for the third Operable Unit at the Site ("Operable Unit 3"), and in 2004 EPA completed a Feasibility Study ("FS") Report addressing the seven source areas of concern at the Site comprising Operable Unit 3.  At that time, EPA determined that Site-wide groundwater, surface water and sediment should be addressed as a fourth Operable Unit at the Site ("Operable Unit 4").

M.      To supplement the data gathered in the 1997 RI Report conducted for Operable Unit 3, EPA conducted additional studies at the Site addressing Operable Unit 4.  In March 2005, EPA completed a Data Evaluation Report.  In September 2006, EPA completed a Groundwater Data Evaluation Report and an Ecological Risk Assessment/Wetlands Remedial Investigation Addendum Report.  In February 2008, EPA completed a Supplemental Human Health Risk Assessment, and in November 2008, EPA completed a Supplemental Groundwater Data Evaluation Report.  In October 2010, EPA completed an FS Report for Operable Unit 4 at the Site.

N.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action at Operable Unit 4 of the Site on October 14, 2010, in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action at Operable Unit 4 of the Site and extended the public comment period for an additional 30 days.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator, EPA Region 1, based the selection of the response action at Operable Unit 4 of the Site.

O.      The decision by EPA on the remedial action to be implemented at Operable Unit 4 of the Site is embodied in a final Record of Decision ("ROD"), executed on July 25, 2011, on which the State has given its concurrence, and an Explanation of Significant Differences ("ESD"), executed on July 22, 2014, which the State has also approved.  The ROD and the ESD include responsiveness summaries to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).  Notice of the ESD was published in accordance with Section 117(c) of CERCLA, 42 U.S.C. § 9617(c).

P.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

Q.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the Remedial Action set forth in the ROD, as modified by the ESD, and the Work to be performed by Settling Defendants shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

R.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of Operable Unit 4 of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.    The Appropriate Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing it with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. The Appropriate Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. The Appropriate Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Appropriate Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.    Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply solely for purposes of this Consent Decree:

"Appropriate Settling Defendant" shall mean the Settling Defendant who is responsible for the performance of specific portions of the Work as set forth in Schedule A. If both Settling

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

Defendants are identified in Schedule A as being responsible for performing specific portions of the Work, then the Appropriate Settling Defendant with respect to that portion of the Work shall mean both Settling Defendants.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" or "Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXVIII). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. The term "working day" shall mean a day other than a Saturday, Sunday, or federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"Explanation of Significant Differences" or "ESD" shall mean the Explanation of Significant Differences relating to Operable Unit 4 at the Site signed on July 22, 2014, by the Regional Administrator, EPA Region 1, or his/her delegate, and all attachments thereto. The ESD is attached as Appendix F.

"Future Response Costs" shall mean all costs related to Operable Unit 4, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Paragraph 10 (Notice to Successors-in-Title and Transfers of Real Property), Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount of just compensation), XV (Emergency Response), Paragraph 49 (Funding for Work Takeover), and Section XXIX (Community Relations). Future Response Costs shall also include all Interim Response Costs.

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at the Site.

6

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

"Institutional Control Implementation and Assurance Plan" or "ICIAP" shall mean the plan for implementing, maintaining, monitoring, and reporting on the Institutional Controls set forth in the ROD, prepared in accordance with the statement of work ("SOW").

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with Operable Unit 4 between September 6, 2013 and the Effective Date, or (b) incurred with respect to Operable Unit 4 prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Iron Horse Park Superfund Site Special Account" shall mean the special account, within the EPA Hazardous Substances Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"MassDEP" shall mean the Massachusetts Department of Environmental Protection and any successor departments or agencies.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operable Unit 4" or "OU4" shall mean the fourth Operable Unit at the Site, identified in EPA's Record of Decision dated July 25, 2011, as modified by the ESD dated July 22, 2014, consisting of the response actions, including without limitation Operation and Maintenance, identified in the ROD, as modified by the ESD, to address contaminated sediment and groundwater at the Site. The Site map attached hereto as Appendix C generally depicts the location of OU4 at the Site.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by the Appropriate Settling Defendant) and the SOW, and maintenance, monitoring, and enforcement of Institutional Controls as provided in the ICIAP.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States and Settling Defendants.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with Operable Unit 4 through September 6, 2013, plus Interest on all such costs, including but not limited to Interest accruing from September 6, 2013 through October 1, 2014.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in Section L of the ROD, as modified

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

by Section IV of the ESD, and Section IV of the SOW, and any modified standards established pursuant to this Consent Decree.

"Plaintiff" shall mean the United States.

"Proprietary Controls" shall mean easements or covenants running with the land that: (a) limit land, water, or resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded by the owner in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. § 6901, *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to Operable Unit 4 at the Site signed on July 25, 2011, by the Regional Administrator, EPA Region 1, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" shall mean all activities Settling Defendants are required to perform under the Consent Decree to implement the ROD, as modified by the ESD, in accordance with the SOW, the final Remedial Design and Remedial Action Work Plans, and other plans approved by EPA, including implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, O&M, and the activities required under Section XXV (Retention of Records).

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 13 (Remedial Action) and approved by EPA, and any modifications thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 12 (Remedial Design) and approved by EPA, and any modifications thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean Boston and Maine Corporation and the Massachusetts Bay Transportation Authority.

"Site" shall mean the Iron Horse Park Superfund Site, encompassing approximately 553 acres, located in Billerica, Middlesex County, Massachusetts, and depicted generally on the map attached as Appendix C.

"State" or "Commonwealth" shall mean the Commonwealth of Massachusetts.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and O&M at Operable Unit 4 of the Site, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

8

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

"Supervising Contractor" shall mean the principal contractor retained by each Appropriate Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree pursuant to Schedule A.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" shall mean the United States of America and each department, agency and instrumentality of the United States, including EPA.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous waste" under M.G.L. c. 21C, § 2.

"Work" shall mean all activities and obligations an Appropriate Settling Defendant is required to perform under this Consent Decree, except the activities required under Section XXV (Retention of Records).

## V.  GENERAL PROVISIONS

5.      Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment by the design and implementation of response actions at Operable Unit 4 of the Site by Settling Defendants, in accordance with Schedule A of this Consent Decree, to reimburse Past and Future Response Costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendants concerning OU4 as provided in this Consent Decree.

6.      Commitments by the Appropriate Settling Defendant.

      a.      The Appropriate Settling Defendant shall finance and perform the Work in accordance with this Consent Decree, the ROD, as modified by the ESD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by the Appropriate Settling Defendant and approved by EPA pursuant to this Consent Decree and in accordance with Schedule A.  Settling Defendants shall reimburse the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.

7.      a.      Except as otherwise set forth in this Consent Decree or Schedule A attached hereto, Settling Defendants shall be jointly and severally liable for Past Response Costs and Future Response Costs.

      b.      The obligations of each Appropriate Settling Defendant to finance and perform the Work are set forth pursuant to Schedule A. Pursuant to Schedule A, Settling Defendants are jointly and severally liable for performance of the Work regarding sediment.  In the event of the insolvency or other failure of one Settling Defendant to perform the requirements of this Consent Decree for sediment, the other Settling Defendant shall complete all such requirements.

8.      Compliance With Applicable Law.  All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

requirements of all applicable federal and state laws and regulations. The Appropriate Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD, as modified by the ESD, and the SOW relating to the Work for which it is responsible pursuant to Schedule A. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

9.   Permits.

a.   As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-Site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-Site requires a federal or state permit or approval, the Appropriate Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.   The Appropriate Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 9.a and required for the Work, provided that it has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.   This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

10.   Notice to Successors-in-Title and Transfers of Real Property.

a.   For any real property owned or controlled by either Settling Defendant and located at the Site, such Settling Defendant shall, within 15 days after the Effective Date, submit to EPA for review and approval a proposed notice to be filed with the appropriate land records office that provides a description of the real property and provides notice to all successors-in-title that the real property is part of the Site, that EPA has selected a remedy for Operable Unit 4, and that potentially responsible parties have entered into a Consent Decree requiring implementation of the remedy for OU4. The notice also shall describe the land use restrictions, if any, set forth in Paragraphs 27.b and 28.a(2) and shall identify the United States District Court in which the Consent Decree was filed, the name and civil action number of this case, and the date the Consent Decree was entered by the Court. Each Settling Defendant shall record the notice within ten days after EPA's approval of the notice. Each Settling Defendant shall provide EPA with a certified copy of the recorded notice within ten days after recording such notice.

b.   Each Settling Defendant shall, at least 30 days prior to any Transfer of any real property located at the Site and addressed by Operable Unit 4, give written notice: (1) to the transferee regarding the Consent Decree and any Institutional Controls regarding the real property; and (2) to EPA regarding the proposed Transfer, including the name and address of the transferee and the date on which the transferee was notified of the Consent Decree and any Institutional Controls.

10

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

      c.     Each Settling Defendant may Transfer any real property located at the Site and addressed by Operable Unit 4 only if: (1) any Proprietary Controls required by Paragraph 27.c have been recorded with respect to the real property; or (2) the Settling Defendant transferring the property has obtained an agreement from the transferee, enforceable by Settling Defendants and the United States, to (i) allow access and restrict land/water use, pursuant to Paragraphs 28.a(1) and 28.a(2), (ii) record any Proprietary Controls on the real property, pursuant to Paragraph 28.a(3), and (iii) subordinate its rights to any such Proprietary Controls, pursuant to Paragraph 28.a(3), and EPA has approved the agreement in writing. If, after a Transfer of the real property, the transferee fails to comply with the agreement provided for in this Paragraph 10.c, the Settling Defendant transferring the property shall take all reasonable steps to obtain the transferee's compliance with such agreement. The United States may seek the transferee's compliance with the agreement and/or assist the Settling Defendant transferring the property in obtaining compliance with the agreement. The Settling Defendant transferring the property shall reimburse the United States under Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States regarding obtaining compliance with such agreement, including, but not limited to, the cost of attorney time.

      d.     In the event of any Transfer of real property located at the Site and addressed by Operable Unit 4, unless the United States otherwise consents in writing, the Settling Defendant transferring the property shall continue to comply with its obligations under the Consent Decree, including, but not limited to, its obligation to provide and/or secure access, to implement, maintain, monitor, and report on Institutional Controls, and to abide by such Institutional Controls.

VI. PERFORMANCE OF THE WORK BY THE APPROPRIATE SETTLING DEFENDANT

    11.    <u>Selection of Supervising Contractor.</u>

      a.     All aspects of the Work to be performed by the Appropriate Settling Defendant pursuant to Schedule A, Sections VI (Performance of the Work by the Appropriate Settling Defendant), VII (Remedy Review), VIII (Quality Assurance, Sampling, and Data Analysis), IX (Access and Institutional Controls), and XV (Emergency Response) shall be under the direction and supervision of a Supervising Contractor, the selection of which shall be subject to disapproval by EPA. Within ten days after the lodging of this Consent Decree, each Appropriate Settling Defendant shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be its Supervising Contractor. With respect to any contractor proposed to be a Supervising Contractor, the Appropriate Settling Defendant shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP"). The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor. If at any time thereafter, an Appropriate Settling Defendant proposes to change a Supervising Contractor, such Appropriate Settling Defendant shall give such notice to EPA and must obtain an authorization to proceed from EPA before the

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

        b.     If EPA disapproves a proposed Supervising Contractor, EPA will notify the Appropriate Settling Defendant in writing. The Appropriate Settling Defendant shall submit to EPA a list of contractors, including the qualifications of each contractor that would be acceptable to the Appropriate Settling Defendant within 45 days after receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. The Appropriate Settling Defendant may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days after EPA's authorization to proceed.

        c.     If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Appropriate Settling Defendant from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, the Appropriate Settling Defendant may seek relief under Section XVIII (Force Majeure).

        12.     <u>Remedial Design</u>.

        a.     Within 21 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 11 (Selection of Supervising Contractor), the Appropriate Settling Defendant shall, pursuant to Schedule A, submit to EPA and MassDEP a Design Schedule, as required by Section V.A.1 of the SOW attached as Appendix B hereto, for EPA review and approval or modification or disapproval. The Appropriate Settling Defendant shall submit a work plan for the design of the Remedial Action ("Remedial Design Work Plan") in accordance with the approved Design Schedule. The Remedial Design Work Plan shall provide for design, in accordance with the SOW, of that portion of the remedy set forth in the ROD, as modified by the ESD, for which the Appropriate Settling Defendant is responsible pursuant to Schedule A, and for achievement of the Performance Standards and other requirements set forth in the ROD, as modified by the ESD, this Consent Decree, and/or the SOW. Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and enforceable under this Consent Decree. In accordance with the approved Design Schedule, the Appropriate Settling Defendant shall submit to EPA and MassDEP a Health and Safety Plan for field design activities that conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

        b.     The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW.

        c.     Upon approval of the Remedial Design Work Plan by EPA, and submission of the Health and Safety Plan for all field activities to EPA and MassDEP, the Appropriate Settling Defendant shall implement the Remedial Design Work Plan. The Appropriate Settling Defendant shall submit to EPA and MassDEP all plans, reports, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Unless otherwise directed by EPA, the Appropriate Settling

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

Defendant shall not commence further Remedial Design activities at Operable Unit 4 prior to approval of the Remedial Design Work Plan.

13.   Remedial Action.

a.     Within 30 days after the approval of a final design submission, the Appropriate Settling Defendant shall submit to EPA and MassDEP a work plan for the performance of that portion of the Remedial Action at OU4 for which it is responsible pursuant to Schedule A ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD, as modified by the ESD, and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, as modified by the ESD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and enforceable under this Consent Decree. At the same time as the Appropriate Settling Defendant submits the Remedial Action Work Plan, the Appropriate Settling Defendant shall submit to EPA a Health and Safety Plan for field activities required by the Remedial Action Work Plan that conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.     Upon approval of the Remedial Action Work Plan by EPA, the Appropriate Settling Defendant shall implement the activities required under the Remedial Action Work Plan. The Appropriate Settling Defendant shall submit to EPA and MassDEP all reports and other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Unless otherwise directed by EPA, the Appropriate Settling Defendant shall not commence physical Remedial Action activities at Operable Unit 4 prior to approval of the Remedial Action Work Plan.

14.   The Appropriate Settling Defendant shall continue to implement the Remedial Action until the Performance Standards are achieved. The Appropriate Settling Defendant shall implement O&M for so long thereafter as is required by this Consent Decree.

15.   Modification of SOW or Related Work Plans.

a.     If EPA determines that it is necessary or appropriate to modify the Work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, as modified by the ESD, and such modification is consistent with the scope of the remedy set forth in the ROD, as modified by the ESD, then EPA may issue such modification in writing and shall notify the Appropriate Settling Defendant of such modification. For the purposes of this Paragraph and Paragraphs 51 (Completion of the Remedial Action) and 52 (Completion of the Work) only, the "scope of the remedy set forth in the ROD" is: the remedial action described in Section L of the ROD, as modified by the ESD, or any amendments or modifications thereto. If the Appropriate Settling Defendant objects to the modification it may, within 30 days after EPA's notification, seek dispute resolution under Paragraph 70 (Record Review).

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

      b.     The SOW and/or related work plans shall be modified: (1) in accordance with the modification issued by EPA; or (2) if the Appropriate Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this Consent Decree, and the Appropriate Settling Defendant shall implement all work required by such modification. The Appropriate Settling Defendant shall incorporate the modification into the Remedial Design or Remedial Action Work Plan under Paragraph 12 (Remedial Design) or Paragraph 13 (Remedial Action), as appropriate.

      c.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

16.     Nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

17.     <u>Off-Site Shipment of Waste Material</u>.

      a.     The Appropriate Settling Defendant may ship Waste Material from the Site to an off-site facility only if the Appropriate Settling Defendant verifies, prior to any shipment, that the off-site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

      b.     The Appropriate Settling Defendant may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, the Appropriate Settling Defendant provides written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator. This notice requirement shall not apply to any off-site shipments when the total quantity of all such shipments will not exceed ten cubic yards. The written notice shall include the following information, if available: (1) the name and location of the receiving facility; (2) the type and quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation. The Appropriate Settling Defendant also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility. The Appropriate Settling Defendant shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

## VII. REMEDY REVIEW

18.     <u>Periodic Review</u>. The Appropriate Settling Defendant shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

19.     <u>EPA Selection of Further Response Actions</u>. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

further response actions for Operable Unit 4 of the Site in accordance with the requirements of CERCLA and the NCP.

20.     Opportunity To Comment.  Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

21.     Obligation To Perform Further Response Actions.  If EPA selects further response actions for Operable Unit 4 of the Site, EPA may require the Appropriate Settling Defendant to perform such further response actions, but only to the extent that the reopener conditions in Paragraph 86 or Paragraph 87 (United States' Pre- and Post-Certification Reservations) are satisfied.  The Appropriate Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (a) EPA's determination that the reopener conditions of Paragraph 86 or Paragraph 87 are satisfied, (b) EPA's determination that the Remedial Action for Operable Unit 4 of the Site is not protective of human health and the environment, or (c) EPA's selection of the further response actions for Operable Unit 4 of the Site.  Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 70 (Record Review).

22.     Submission of Plans.  If the Appropriate Settling Defendant is required to perform further response actions pursuant to Paragraph 21, it shall submit a plan for such response actions to EPA for approval in accordance with the procedures of Section VI (Performance of the Work by the Appropriate Settling Defendant).  The Appropriate Settling Defendant shall implement the approved plan in accordance with this Consent Decree.

VIII.  QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

23.     Quality Assurance.

a.      The Appropriate Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance, and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001, reissued May 2006), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification by EPA to the Appropriate Settling Defendant of such amendment. Amended guidelines shall apply only to procedures conducted after such notification.

b.      Prior to the commencement of any monitoring project under this Consent Decree, the Appropriate Settling Defendant shall submit to EPA for approval, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP, and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  The Appropriate Settling Defendant shall ensure that EPA and its authorized representatives are allowed access at reasonable times to all laboratories utilized by such Appropriate Settling Defendant in implementing this Consent Decree.  In addition, the Appropriate Settling Defendant

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. The Appropriate Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods that are documented in the "USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by EPA, the Appropriate Settling Defendant may use other analytical methods that are as stringent as or more stringent than the CLP-approved methods. The Appropriate Settling Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program. The Appropriate Settling Defendant shall use only laboratories that have a documented Quality System that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. The Appropriate Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

24.     Upon request, the Appropriate Settling Defendant shall allow split or duplicate samples to be taken by EPA or its authorized representatives. The Appropriate Settling Defendant shall notify EPA not less than 30 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Appropriate Settling Defendant to take split or duplicate samples of any samples it takes as part of Plaintiff's oversight of such Appropriate Settling Defendant's implementation of the Work.

25.     The Appropriate Settling Defendant shall submit to EPA and MassDEP two (2) copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of such Appropriate Settling Defendant with respect to Operable Unit 4 and/or the implementation of this Consent Decree unless EPA agrees otherwise.

26.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

IX. ACCESS AND INSTITUTIONAL CONTROLS

27.     If the Site, or any other real property where access or land/water use restrictions are needed, is owned or controlled by either Settling Defendant:

a.      such Settling Defendant shall, commencing on the date of lodging of the Consent Decree, provide the United States, the State, and the other Settling Defendant, and their representatives, contractors, and subcontractors, with access at all reasonable times to the Site, or

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

such other real property, taking into account that a portion of Operable Unit 4 is an active railyard, and as such, access to any portions of Operable Unit 4 located in the active railyard shall address safety, notice and applicable railroad or safety laws, provided that the cost of compliance with any such safety, notice and applicable railroad or safety laws shall be the sole responsibility of the Appropriate Settling Defendant, for the purpose of conducting any activity regarding the Consent Decree including, but not limited to, the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States;

(3)     Conducting investigations regarding contamination at or near Operable Unit 4;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near Operable Unit 4;

(6)     Assessing implementation of quality assurance and quality control practices;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 90 (Work Takeover);

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Defendants' compliance with the Consent Decree;

(10)     Determining whether Operable Unit 4 of the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(11)     Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls of Operable Unit 4 and the requirements of the ICIAP.

b.     commencing on the date of lodging of the Consent Decree, such Settling Defendant shall not use Operable Unit 4 of the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

c.     such Settling Defendant shall:

(1)     In accordance with the requirements of the ICIAP, execute and record in the appropriate land records office Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 27.a; and (ii) grant the right to enforce the

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

land/water use restrictions set forth in Paragraph 27.b, including, but not limited to, any land/water use restrictions listed in the ICIAP, as further specified in this Paragraph 27.c. The Proprietary Controls shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives; and/or (ii) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA is a "third-party beneficiary," allowing EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property.

(2)     In accordance with the schedule set forth in the ICIAP, submit to EPA for review and approval regarding such real property: (i)  draft Proprietary Controls that are enforceable under state law; and (ii) a current title insurance commitment or other evidence of title acceptable to EPA, which shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, such Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

(3)     Within 15 days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record the Proprietary Controls with the appropriate land records office. Within 30 days after recording the Proprietary Controls, such Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title shall be obtained as required by 40 U.S.C. § 3111.

28.     If Operable Unit 4 of the Site, or any other real property where access and/or land/water use restrictions are needed, is owned or controlled by persons other than either Settling Defendant:

a.     the Appropriate Settling Defendant shall use best efforts to secure from such persons:

(1)     an agreement to provide access thereto for the United States and its representatives, contractors, and subcontractors, to conduct any activity regarding the Consent Decree including, but not limited to, the activities listed in Paragraph 27.a;

(2)     an agreement, enforceable by the Appropriate Settling Defendant and the United States, to refrain from using Operable Unit 4 of the Site, or such other real property, in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action; and

18

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

        (3)    the execution and recordation in the appropriate land records office of Proprietary Controls, that (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 27.a, and (ii) grant the right to enforce the land/water use restrictions set forth in Paragraph 27.b, including, but not limited to, any land/water use restrictions listed in the ICIAP. The Proprietary Controls shall be granted to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, and/or (ii) other appropriate grantees. The Proprietary Controls, other than those granted to the United States, shall include a designation that EPA is a third party beneficiary, allowing EPA to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property.

        b.    In accordance with the schedule set forth in the ICIAP, the Appropriate Settling Defendant shall submit to EPA for review and approval regarding such property: (i) draft Proprietary Controls that are enforceable under state law; and (ii) a current title insurance commitment, or other evidence of title acceptable to EPA, which shows title to the land affected by the Proprietary Controls to be free and clear of all prior liens and encumbrances (except when EPA waives the release or subordination of such prior liens or encumbrances or when, despite best efforts, the Appropriate Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

        c.    Within 15 days of EPA's approval and acceptance of the Proprietary Controls and the title evidence, the Appropriate Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, the Proprietary Controls shall be recorded with the appropriate land records office. Within 30 days after the recording of the Proprietary Controls, the Appropriate Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded Proprietary Controls showing the clerk's recording stamps. If the Proprietary Controls are to be conveyed to the United States, the Proprietary Controls and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 3111.

       29.    For purposes of Paragraphs 27 and 28, "best efforts" includes the payment of reasonable sums of money to obtain access, an agreement to restrict land/water use, Proprietary Controls, and/or an agreement to release or subordinate a prior lien or encumbrance. If, within 45 days after EPA's approval of the ICIAP, the Appropriate Settling Defendant has not: (a) obtained agreements to provide access, restrict land/water use, or record Proprietary Controls, as required by Paragraph 28.a(1), 28.a(2), or 28.a(3); or (b) obtained, pursuant to Paragraph 27.c(2) or 28.b, agreements from the holders of prior liens or encumbrances to release or subordinate such liens or encumbrances to the Proprietary Controls, the Appropriate Settling Defendant shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that the Appropriate Settling Defendant has taken to attempt to comply with Paragraph 27 or 28. The United States may, as it deems appropriate, assist the Appropriate Settling Defendant in obtaining access, agreements to restrict land/water use, Proprietary

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

Controls, or the release or subordination of a prior lien or encumbrance. The Appropriate Settling Defendant shall reimburse the United States under Section XVI (Payments for Response Costs) for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, Proprietary Controls, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

30.     If EPA determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed, the Appropriate Settling Defendant shall cooperate with EPA's efforts to secure and ensure compliance with such governmental controls.

31.     Notwithstanding any provision of the Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

32.     In addition to any other requirement of this Consent Decree, the Appropriate Settling Defendant shall submit two (2) copies to EPA and two (2) copies to MassDEP of written monthly progress reports that: (a) describe the actions that have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by the Appropriate Settling Defendant or its contractors or agents in the previous month; (c) identify all plans, reports, and other deliverables required by this Consent Decree that have been completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, that are scheduled for the next two months and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that the Appropriate Settling Defendant has proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next two months. The Appropriate Settling Defendant shall submit these progress reports to EPA and MassDEP by the tenth day of every month as required by the SOW until EPA notifies the Appropriate Settling Defendant pursuant to Paragraph 52.b of Section XIV (Certification of Completion). If requested by EPA, the Appropriate Settling Defendant shall also provide briefings for EPA and MassDEP to discuss the progress of the Work.

33.     The Appropriate Settling Defendant shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

34.     Upon the occurrence of any event during performance of the Work that the Appropriate Settling Defendant is required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-know Act ("EPCRA"), 42 U.S.C. § 11004, the Appropriate Settling Defendant shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator nor Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 1, United States Environmental Protection Agency.  The Appropriate Settling Defendant shall also make such notifications as required under State law. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

35.     Within 20 days after the onset of such an event, the Appropriate Settling Defendant shall furnish to EPA and MassDEP a written report, signed by the Appropriate Settling Defendant's Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto. Within 45 days after the conclusion of such an event, the Appropriate Settling Defendant shall submit a report setting forth all actions taken in response thereto.

36.     The Appropriate Settling Defendant shall submit two (2) copies of all plans, reports, data, and other deliverables required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  The Appropriate Settling Defendant shall simultaneously submit two (2) copies of all such plans, reports, data, and other deliverables to MassDEP.  Upon request by EPA, the Appropriate Settling Defendant shall submit in electronic form all or any portion of any deliverables the Appropriate Settling Defendant is required to submit pursuant to the provisions of this Consent Decree.

37.     All deliverables submitted by the Appropriate Settling Defendant to EPA and MassDEP that purport to document the Appropriate Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Appropriate Settling Defendant.

XI.  EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

38.     Initial Submissions.

a.     After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, shall: (1) approve, in whole or in part, the submission; (2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

b.     EPA also may modify the initial submission to cure deficiencies in the submission if: (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

39.     Resubmissions. Upon receipt of a notice of disapproval under Paragraph 38.a(3) or (4), or if required by a notice of approval upon specified conditions under Paragraph 38.a(2), the Appropriate Settling Defendant shall, within 21 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval. After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring the Appropriate Settling Defendant to correct the deficiencies; or (e) any combination of the foregoing.

40.     Material Defects. If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 38.b(2) or 39 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 73 of Section XX (Stipulated Penalties). The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding the Appropriate Settling Defendant's submissions under this Section.

41.     Implementation. Upon approval, approval upon conditions, or modification by EPA under Paragraph 38 (Initial Submissions) or Paragraph 39 (Resubmissions), of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) the Appropriate Settling Defendant shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA. The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 38 or 39 shall not relieve the Appropriate Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

## XII. PROJECT COORDINATORS

42.     Within 20 days after lodging this Consent Decree, each Appropriate Settling Defendant and EPA will notify each other, in writing, of the name, address, and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made. Each Appropriate Settling Defendant's Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. No Appropriate Settling Defendant's Project Coordinator shall be an attorney for any Settling Defendant in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

43.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R. Part 300. EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

44.    EPA's Project Coordinator and each Appropriate Settling Defendant's Project Coordinator will meet, at a minimum, on a monthly basis.

## XIII.  PERFORMANCE GUARANTEE

45.    In order to ensure the full and final completion of the Work, each Appropriate Settling Defendant shall establish and maintain a performance guarantee, in an amount necessary to perform the Work for which the Appropriate Settling Defendant is responsible pursuant to Schedule A, for the benefit of EPA. The amount of the performance guarantee for each Appropriate Settling Defendant shall be as set forth in Appendix E (hereinafter "Estimated Cost of the Work"). The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if an Appropriate Settling Defendant intends to use multiple mechanisms, such multiple mechanisms shall be limited to surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

a.    A surety bond unconditionally guaranteeing payment and/or performance of the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A, that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.    One or more irrevocable letters of credit, equaling the total estimated cost of the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue letters of credit and (2) whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.    A trust fund in the amount of the total estimated cost of the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A, established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a federal or state agency;

d.    A policy of insurance in the amount of the total estimated cost of the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A, that (1) provides EPA with acceptable rights as a beneficiary thereof; and (2) is issued by an insurance carrier (i) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (ii) whose insurance operations are regulated and examined by a federal or state agency;

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

   e. A demonstration by the Appropriate Settling Defendant that it meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the  Estimated Cost of the Work set forth in Appendix E (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction; or

   f. A written guarantee to fund or perform the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A, executed in favor of EPA by one or more of the following: (1) a direct or indirect parent company of the Appropriate Settling Defendant, or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with the Appropriate Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work set forth in Appendix E  (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

  46. Each Appropriate Settling Defendant has selected, and EPA has found satisfactory, as an initial performance guarantee, for the Massachusetts Bay Transportation Authority, the financial test, and for the Boston and Maine Corporation, a modified financial test, in the forms attached hereto as Appendix D.  Within thirty (30) days after the Effective Date, each Appropriate Settling Defendant shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantees legally binding in a form substantially identical to the documents attached hereto as Appendix D, and such performance guarantees shall thereupon be fully effective.  Within 45 days after the Effective Date, each Appropriate Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantees legally binding to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions), with a copy to the EPA Regional Financial Management Officer and to the United States and EPA as specified in Section XXVI.

  47. If, at any time after the Effective Date and before issuance of the Certification of Completion of the Work pursuant to Paragraph 52, an Appropriate Settling Defendant provides a performance guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 45.e or 45.f, such Appropriate Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these mechanisms unless otherwise provided in this Consent Decree, including but not limited to: (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its financial test sample CFO letters and CPA reports available at: http://www.epa.gov/compliance/resources/policies/cleanup/superfund/fa-test-samples.pdf; (b) the annual resubmission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (c) the prompt notification of EPA after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1) and in any event within 90 days after the close of any fiscal year in which such entity no longer

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

satisfies such financial test requirements. For purposes of the performance guarantee mechanisms specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to include the Work; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work set forth in Appendix E; the terms "owner" and "operator" shall be deemed to refer to the Appropriate Settling Defendant making a demonstration under Paragraph 45.e; and the terms "facility" and "hazardous waste facility" shall be deemed to include Operable Unit 4 of the Site.

48.     In the event that EPA determines at any time that a performance guarantee provided by an Appropriate Settling Defendant pursuant to this Section no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that an Appropriate Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, such Appropriate Settling Defendant, within 30 days after receipt of notice of EPA's determination or, as the case may be, within 30 days after an Appropriate Settling Defendant becomes aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 45 that satisfies all requirements set forth in this Section XIII; provided, however, that if the Appropriate Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that the Appropriate Settling Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for the Appropriate Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 30 days. In seeking approval for a revised or alternative form of performance guarantee, the Appropriate Settling Defendant shall follow the procedures set forth in Paragraph 50.b(2). An Appropriate Settling Defendant's inability to post a performance guarantee for completion of the Work for which it has responsibility pursuant to Schedule A shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of the Appropriate Settling Defendant to complete the Work in strict accordance with the terms of this Consent Decree.

49.     Funding for Work Takeover.  The commencement of any Work Takeover pursuant to Paragraph 90 shall trigger EPA's right to receive the benefit of any performance guarantee(s) provided pursuant to Paragraphs 45.a, 45.b, 45.c, 45.d, or 45.f, and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. Upon the commencement of any Work Takeover, if (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

Paragraph 45.e or Paragraph 45.f(2), the Appropriate Settling Defendant (or in the case of Paragraph 45.f(2), the guarantor) shall immediately upon written demand from EPA deposit into a special account within the EPA Hazardous Substance Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the Work as of such date, as determined by EPA. In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless the Appropriate Settling Defendant provides a substitute performance guarantee mechanism in accordance with this Section XIII no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee. All EPA Work Takeover costs not reimbursed under this Paragraph shall be reimbursed by the Appropriate Settling Defendant under Section XVI (Payments for Response Costs).

50.     Modification of Amount and/or Form of Performance Guarantee.

a.     Reduction of Amount of Performance Guarantee. If an Appropriate Settling Defendant believes that the estimated cost of completing the Work has diminished below the amount set forth in Appendix E, the Appropriate Settling Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A. The Appropriate Settling Defendant shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A and the basis upon which such cost was calculated. In seeking approval for a reduction in the amount of the performance guarantee, the Appropriate Settling Defendant shall follow the procedures set forth in Paragraph 50.b(2) for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 50.a. If EPA decides to accept an Appropriate Settling Defendant's proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in such Appropriate Settling Defendant's written proposal or to some other amount as selected by EPA, EPA will notify the petitioning Appropriate Settling Defendant of such decision in writing. Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work for that Appropriate Settling Defendant shall be deemed to be the estimated cost of completing the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A, as set forth in EPA's written decision. After receiving EPA's written decision, the Appropriate Settling Defendant may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance and shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 50.b(2). In the event of a dispute, the Appropriate Settling Defendant may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution). No change to the form or terms of any performance

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 48 or 50.b.

      b.      Change of Form of Performance Guarantee.

         (1)     If, after the Effective Date, an Appropriate Settling Defendant desires to change the form or terms of any performance guarantee(s) provided pursuant to this Section, such Appropriate Settling Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of the performance guarantee provided hereunder. The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 50.b (2). Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by the Appropriate Settling Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

         (2)     The Appropriate Settling Defendant shall submit a written proposal for a revised or alternative performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding. The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section. The Appropriate Settling Defendant shall submit such proposed revised or alternative performance guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions), with a copy to EPA. EPA will notify the Appropriate Settling Defendant in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph. Within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee, the Appropriate Settling Defendant shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective. The Appropriate Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer within 45 days after receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXVI (Notices and Submissions), with a copy to the United States and EPA as specified in Section XXVI.

      c.      Release of Performance Guarantee. Each Appropriate Settling Defendant shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph. If an Appropriate Settling Defendant receives written notice from EPA in accordance with Paragraph 52 that the Work has been fully and

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies an Appropriate Settling Defendant in writing, such Appropriate Settling Defendant may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section. In the event of a dispute, the Appropriate Settling Defendants may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

## XIV.  CERTIFICATION OF COMPLETION

51.     Completion of the Remedial Action.

a.      Within 90 days after an Appropriate Settling Defendant concludes that the Remedial Action has been fully performed and the Performance Standards have been achieved for that portion of the Work for which the Appropriate Settling Defendant is responsible pursuant to Schedule A, such Appropriate Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by the Appropriate Settling Defendant, EPA, and MassDEP. If, after the pre-certification inspection, the Appropriate Settling Defendant still believes that the Remedial Action has been fully performed and the Performance Standards have been achieved, it shall submit a written report requesting certification to EPA for approval, with a copy to MassDEP, pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables) within 30 days after the inspection. In the report, a registered professional engineer and the Appropriate Settling Defendant's Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of the Appropriate Settling Defendant or the Appropriate Settling Defendant's Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify the Appropriate Settling Defendant in writing of the activities that must be undertaken by the Appropriate Settling Defendant pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require the Appropriate Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 15.a. EPA will set forth in the notice a

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Appropriate Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). The Appropriate Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to the right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

   b. If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action, that the Remedial Action for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to such Appropriate Settling Defendant. This certification shall constitute the Certification of Completion of the Remedial Action for that portion of the Work for which the Appropriate Settling Defendant is responsible for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants by Plaintiff). Certification of Completion of the Remedial Action for a portion of the Work shall not affect Settling Defendants' remaining obligations under this Consent Decree.

   52. <u>Completion of the Work</u>.

   a. Within 90 days after an Appropriate Settling Defendant concludes that all phases of the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A, other than any remaining activities required under Section VII (Remedy Review), have been fully performed, such Appropriate Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by the Appropriate Settling Defendant, EPA, and MassDEP. If, after the pre-certification inspection, the Appropriate Settling Defendant still believes that the Work has been fully performed, the Appropriate Settling Defendant shall submit a written report by a registered professional engineer stating that the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the statement set forth in Paragraph 51.a, signed by a responsible corporate official of the Appropriate Settling Defendant or the Appropriate Settling Defendant's Project Coordinator. If, after review of the written report, EPA determines, that any portion of the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A has not been completed in accordance with this Consent Decree, EPA will notify the Appropriate Settling Defendant in writing of the activities that must be undertaken by the Appropriate Settling Defendant pursuant to this Consent Decree to complete the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A, provided, however, that EPA may only require the Appropriate Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 15.a. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Appropriate Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). The Appropriate Settling Defendant shall perform all activities described in the notice in accordance with the

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

specifications and schedules established therein, subject to the right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

> b.    If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by an Appropriate Settling Defendant, that the Work for which the Appropriate Settling Defendant has responsibility pursuant to Schedule A has been performed in accordance with this Consent Decree, EPA will so notify such Appropriate Settling Defendant in writing.

## XV. EMERGENCY RESPONSE

> 53.    If any action or occurrence during the performance of the Work that causes or threatens a release of Waste Material from the Site, constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, the Appropriate Settling Defendant shall, subject to Paragraph 54, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, the Appropriate Settling Defendant shall notify the EPA Emergency Response Unit, Region 1. In such an event, the Appropriate Settling Defendant shall also notify MassDEP as set forth in Paragraph 106 of Section XXVI (Notices and Submissions) and MassDEP's Northeast Regional Office of the Emergency Response Section. The Appropriate Settling Defendant shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that the Appropriate Settling Defendant fails to take appropriate response action as required by this Section and EPA takes such action instead, such Appropriate Settling Defendant shall reimburse EPA all costs of the response action under Section XVI (Payments for Response Costs).

> 54.    Subject to Section XXI (Covenants by Plaintiff), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

## XVI. PAYMENTS FOR RESPONSE COSTS

55.    Payment by Settling Defendants for Past Response Costs.

a.    Settling Defendants shall pay to EPA $1,560,570 in payment for Past Response Costs. Payment shall be made in accordance with Paragraph 57.a (Instructions for Past Response Cost Payments). Payment shall be made in twelve quarterly installments of $130,047.50 plus an additional sum for Interest on the unpaid balance through the date of each payment. Interest shall start running on October 1, 2014. The payments shall be made on or before March 31, June 30, September 30 and December 31 of each calendar year, beginning with the first installment date after the Effective Date. If the first installment date falls before the 30th day after the Effective Date, the first payment (with Interest) shall be due on or before the 30th day after the Effective Date.

b.    EPA will deposit all the Settling Defendants' payments pursuant to Paragraph 55.a in the Iron Horse Park Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

56.    Payments by Settling Defendants for Future Response Costs. Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the NCP.

a.    On a periodic basis, EPA will send Settling Defendants a bill requiring payment that includes an Itemized Cost Summary and a DOJ case cost summary. Settling Defendants shall make all payments within 30 days after Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 58, in accordance with Paragraph 57.b (Instructions for Future Response Cost Payments).

b.    The total amount to be paid by Setting Defendants pursuant to Paragraph 56.a shall be deposited by EPA in the Iron Horse Park Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

57.    Payment Instructions for Settling Defendants.

a.    Instructions for Past Response Costs Payments. All payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 57.a shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Massachusetts after the Effective Date. The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree. The FLU shall provide the payment instructions to the individuals set forth in Section XXVI (Notices and Submissions). Settling Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change in accordance with Section XXVI (Notices and Submissions). When making payments under this Paragraph 57.a, Settling Defendants shall also comply with Paragraph 57.c.

31

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

       b.     Instructions for Future Response Costs Payments and Stipulated Penalties. All payments required elsewhere in this Consent Decree to be made in accordance with this Paragraph 57.b shall be made by Fedwire EFT to:

> Federal Reserve Bank of New York
> ABA = 021030004
> Account = 68010727
> SWIFT address = FRNYUS33
> 33 Liberty Street
> New York NY 10045
> Field Tag 4200 of the Fedwire message should read "D 68010727 Environmental
> Protection Agency"

When making payments under this Paragraph 57.b, Settling Defendants shall also comply with Paragraph 57.c.

       c.     Instructions for All Payments. All payments made under Paragraphs 57.a (Instructions for Past Response Cost Payments) or 57.b (Instructions for Future Response Cost Payments) shall reference the CDCS Number, Site/Spill ID Number MAD051787323, and DOJ Case Number 90-11-3-90/4. At the time of any payment required to be made in accordance with Paragraphs 57.a or 57.b, Settling Defendants shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XXVI (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at cinwd_acctsreceivable@epa.gov, or by mail at 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268. Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ Case Number.

     58.     Any Settling Defendant may contest any Future Response Costs billed under Paragraph 56 (Payments by Settling Defendants for Future Response Costs) if it determines that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs for Operable Unit 4, or if they believe EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP. Such objection shall be made in writing within 30 days after receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, Settling Defendants shall pay all uncontested Future Response Costs to the United States within 30 days after Settling Defendants' receipt of the bill requiring payment. Simultaneously, the Settling Defendant(s) contesting the Future Response Costs shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC"), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. Such Settling Defendant(s) shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendant(s) contesting the Future Response Costs shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the United States prevails in the dispute, such Settling Defendant(s) shall pay the sums due (with accrued interest) to the United States within five days after the resolution of the dispute. If Settling Defendants prevail concerning any aspect of the contested costs, Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States within five days after the resolution of the dispute. Settling Defendants shall be disbursed any balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with Paragraph 57.b (Instructions for Future Response Cost Payments). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

59.     Interest. In the event that any payment for Past Response Costs or for Future Response Costs required under this Section is not made by the date required, Settling Defendants shall pay Interest on the unpaid balance. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 74.

## XVII.  INDEMNIFICATION AND INSURANCE

60.     Settling Defendants' Indemnification of the United States.

a.     The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of any Appropriate Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). The Appropriate Settling Defendant shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of said Appropriate Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of an Appropriate Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA. Further, the Appropriate Settling Defendant agrees to pay the United States all costs it incurs including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of said Appropriate Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree. The United States shall not be held out as a party to any contract entered into by or on behalf of an Appropriate Settling Defendant in carrying out activities pursuant to this Consent

33

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

Decree. Neither the Appropriate Settling Defendant nor any such contractor shall be considered an agent of the United States.

> b.     The United States shall give the Appropriate Settling Defendant notice of any claim for which the United States plans to seek indemnification pursuant to this Paragraph 60, and shall consult with said Appropriate Settling Defendant prior to settling such claim.

> 61.     The Appropriate Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between the Appropriate Settling Defendant and any person for performance of Work on or relating to Operable Unit 4, including, but not limited to, claims on account of construction delays. In addition, the Appropriate Settling Defendant shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between the Appropriate Settling Defendant and any person for performance of Work on or relating to Operable Unit 4, including, but not limited to, claims on account of construction delays.

> 62.     No later than 30 days before commencing any on-site Work, the Appropriate Settling Defendant shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Remedial Action pursuant to Paragraph 51.b of Section XIV (Certification of Completion), commercial general liability insurance with limits of three million dollars, for any one occurrence, and automobile liability insurance with limits of three million dollars, combined single limit, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on behalf of the Appropriate Settling Defendant pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, the Appropriate Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of the Appropriate Settling Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, the Appropriate Settling Defendant shall provide to EPA certificates of such insurance and a copy of each insurance policy. The Appropriate Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If the Appropriate Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, the Appropriate Settling Defendant need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVIII.   FORCE MAJEURE

> 63.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Appropriate Settling Defendant, of any entity controlled by said Appropriate Settling Defendant, or of the Appropriate Settling Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite the Appropriate Settling Defendant's best efforts to fulfill the obligation. The

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

requirement that the Appropriate Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

64.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which an Appropriate Settling Defendant intends or may intend to assert a claim of force majeure, the Appropriate Settling Defendant shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Director of the Office of Site Remediation and Restoration, EPA Region 1, within 24 hours of when the Appropriate Settling Defendant first knew that the event might cause a delay. Within seven days thereafter, the Appropriate Settling Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Appropriate Settling Defendant's rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of the Appropriate Settling Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment. The Appropriate Settling Defendant shall include with such written notice all available documentation supporting its claim that the delay was attributable to a force majeure. The Appropriate Settling Defendant shall be deemed to know of any circumstance of which the Appropriate Settling Defendant, any entity controlled by the Appropriate Settling Defendant, or the Appropriate Settling Defendant's contractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude the Appropriate Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 63 and whether the Appropriate Settling Defendant has exercised its best efforts under Paragraph 63, EPA may, in its unreviewable discretion, excuse in writing the Appropriate Settling Defendant's failure to submit timely notices under this Paragraph.

65.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify the Appropriate Settling Defendant in writing of its decision. If EPA agrees that the delay is attributable to a force majeure, EPA will notify the Appropriate Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

66.     If the Appropriate Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than 15 days

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

after receipt of EPA's notice. In any such proceeding, the Appropriate Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Appropriate Settling Defendant complied with the requirements of Paragraphs 63 and 64. If the Appropriate Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by the Appropriate Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX. DISPUTE RESOLUTION

67.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendants that have not been disputed in accordance with this Section.

68.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

69.     Statements of Position.

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within ten days after the conclusion of the informal negotiation period, the disputing Settling Defendant(s) invoke the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the disputing Settling Defendant(s). The Statement of Position shall specify Settling Defendant(s)' position as to whether formal dispute resolution should proceed under Paragraph 70 (Record Review) or Paragraph 71.

b.     Within 21 days after receipt of the disputing Settling Defendant(s)' Statement of Position, EPA will serve on the disputing Settling Defendant(s) its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 70 (Record Review) or Paragraph 71. Within 14 days after receipt of EPA's Statement of Position, the disputing Settling Defendant(s) may submit a Reply.

c.     If there is disagreement between EPA and the disputing Settling Defendant(s) as to whether dispute resolution should proceed under Paragraph 70 (Record Review) or Paragraph 71, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the disputing Settling Defendant(s)

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraph 70 and 71.

70.    Record Review. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the ROD's provisions, as modified by the ESD.

a.    An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.    The Director of the Office of Site Remediation and Restoration, EPA Region 1, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 70.a. This decision shall be binding upon Settling Defendant(s), subject only to the right to seek judicial review pursuant to Paragraphs 70.c and 70.d.

c.    Any administrative decision made by EPA pursuant to Paragraph 70.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the disputing Settling Defendant(s) with the Court and served on all Parties within ten days after receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to the disputing Settling Defendant(s)' motion.

d.    In proceedings on any dispute governed by this Paragraph, the disputing Settling Defendant(s) shall have the burden of demonstrating that the decision of the Office of Site Remediation and Restoration Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 70.a.

71.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

a.    Following receipt of the disputing Settling Defendant(s)' Statement of Position submitted pursuant to Paragraph 69, the Director of the Office of Site Remediation and Restoration, EPA Region 1, will issue a final decision resolving the dispute. The Office of Site Remediation and Restoration Director's decision shall be binding on Settling Defendant(s) unless, within ten days after receipt of the decision, the disputing Settling Defendant(s) file with the Court and serve on the parties a motion for judicial review of the decision setting forth the

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to the disputing Settling Defendant(s)' motion.

        b.      Notwithstanding Paragraph I.Q (CERCLA Section 113(j) Record Review) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

72.      The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendant(s) under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 80. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the disputing Settling Defendant(s) do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX.  STIPULATED PENALTIES

73.      The Appropriate Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 74 and 75 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by the Appropriate Settling Defendant shall include completion of all payments and activities required under this Consent Decree, or any plan, report, or other deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

74.      <u>Stipulated Penalty Amounts - Work (Including Payments and Excluding Plans, Reports, and Other Deliverables)</u>.

        a.      The following stipulated penalties shall accrue per violation per day for any noncompliance except those identified in Paragraphs 75 and 76:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2500 | 1st through 14th day |
| $5,000 | 15th through 30th day |
| $10,000 | 31st day and beyond |

75.      <u>Stipulated Penalty Amounts - Plans, Reports, and other Deliverables</u>.  The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other plans or deliverables pursuant to the Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day |

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

| | |
|---|---|
| $1000 | 15th through 30th day |
| $2500 | 31st day and beyond |

76.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 90 (Work Takeover), the Appropriate Settling Defendant shall be liable for a stipulated penalty in the amount of $500,000. Stipulated penalties under this Paragraph are in addition to the remedies available under Paragraphs 49 (Funding for Work Takeover) and 90 (Work Takeover).

77.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Section XI (EPA Approval of Plans, Reports, and Other Deliverables), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies the Appropriate Settling Defendant of any deficiency; (b) with respect to a decision by the Director of the Office of Site Remediation and Restoration, EPA Region 1, under Paragraph 70.b or 71.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that the disputing Settling Defendant(s)' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

78.     Following EPA's determination that the Appropriate Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give such Appropriate Settling Defendant written notification of the same and describe the noncompliance. EPA may send the Appropriate Settling Defendant a written demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified the non-complying Appropriate Settling Defendant of a violation.

79.     All penalties accruing under this Section shall be due and payable to the United States within 30 days after the responsible Appropriate Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless the responsible Appropriate Settling Defendant invokes the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall indicate that the payment is for stipulated penalties, and shall be made in accordance with Paragraph 57.b (Instructions for Future Response Cost Payments and Stipulated Penalties).

80.     Penalties shall continue to accrue as provided in Paragraph 77 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 30 days after the agreement or the receipt of EPA's decision or order;

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

        b.      If the dispute is appealed to this Court and the United States prevails in whole or in part, the responsible Appropriate Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 80.c;

        c.      If the District Court's decision is appealed by any Party, the responsible Appropriate Settling Defendant shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to the responsible Appropriate Settling Defendant to the extent that they prevail.

    81.      If the responsible Appropriate Settling Defendant fails to pay stipulated penalties when due, the responsible Appropriate Settling Defendant shall pay Interest on the unpaid stipulated penalties as follows: (a) if the responsible Appropriate Settling Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 80 until the date of payment; and (b) if the responsible Appropriate Settling Defendant fails to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 79 until the date of payment.  If the responsible Appropriate Settling Defendant fails to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

    82.      The payment of penalties and Interest, if any, shall not alter in any way the Appropriate Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

    83.      Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of the Appropriate Settling Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

    84.      Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  COVENANTS BY PLAINTIFF

    85.      <u>Covenants for Settling Defendants by United States</u>.  In consideration of the actions that will be performed and the payments that will be made by Settling Defendants under this Consent Decree, and except as specifically provided in Paragraphs 86, 87 (United States' Pre- and Post-Certification Reservations), and 89 (General Reservations of Rights), the United

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA relating to the Work, Past Response Costs and Future Response Costs. Except with respect to future liability, these covenants shall take effect upon the receipt by EPA of the payments required by Paragraph 55.a (Payments for Past Response Costs) and any Interest or stipulated penalties due thereon under Paragraph 59 (Interest) or Section XX (Stipulated Penalties). With respect to future liability for each Appropriate Settling Defendant, these covenants shall take effect upon Certification of Completion of Remedial Action by EPA for the portion of the Work for which the Appropriate Settling Defendant is responsible pursuant to Paragraph 51.b of Section XIV (Certification of Completion). These covenants are conditioned upon the satisfactory performance by the Appropriate Settling Defendant of its obligations under this Consent Decree. These covenants extend only to the Appropriate Settling Defendant and do not extend to any other person.

86.     United States' Pre-Certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendants to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) prior to Certification of Completion of the Remedial Action for a portion of the Work identified in Schedule A, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

87.     United States' Post-Certification Reservations.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Settling Defendants to perform further response actions relating to the Site and/or to pay the United States for additional costs of response if, (a) subsequent to Certification of Completion of the Remedial Action for a portion of the Work identified in Schedule A, (1) conditions at the Site, previously unknown to EPA, are discovered, or (2) information, previously unknown to EPA, is received, in whole or in part, and (b) EPA determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

88.     For purposes of Paragraph 86 (United States' Pre-Certification Reservations), the information and the conditions known to EPA will include only that information and those conditions known to EPA as of the date the ESD was signed and set forth in the ROD and the ESD for Operable Unit 4 of the Site and the administrative record supporting the ROD and the ESD. For purposes of Paragraph 87 (United States' Post-Certification Reservations), the information and the conditions known to EPA shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the ROD, the ESD, the administrative record supporting the ROD and the ESD,

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

or in any information received by EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

89.     General Reservations of Rights.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenant.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendants with respect to:

a.     claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

b.     liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.     liability based on the ownership or operation of the Site by Settling Defendants when such ownership or operation commences after signature of this Consent Decree by Settling Defendants;

d.     liability based on Settling Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, as modified by the ESD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendants;

e.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

f.     criminal liability;

g.     liability for violations of federal or state law that occur during or after implementation of the Work; and

h.     liability, prior to Certification of Completion of the Remedial Action for a portion of the Work identified in Schedule A, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 15 (Modification of SOW or Related Work Plans).

90.     Work Takeover.

a.     In the event EPA determines that an Appropriate Settling Defendant has (1) ceased implementation of any portion of the Work for which it is responsible pursuant to Schedule A, or (2) is seriously or repeatedly deficient or late in the performance of the Work for which it is responsible pursuant to Schedule A, or (3) is implementing the Work for which it is responsible pursuant to Schedule A in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to such Appropriate Settling Defendant.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide the Appropriate Settling Defendant a period of 15 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

   b. If, after expiration of the 15-day notice period specified in Paragraph 90.a, the Appropriate Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover"). EPA will notify the Appropriate Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 90.b. Funding of Work Takeover costs is addressed under Paragraph 49.

   c. The Appropriate Settling Defendant may invoke the procedures set forth in Paragraph 70 (Record Review) to dispute EPA's implementation of a Work Takeover under Paragraph 90.b. However, notwithstanding the Appropriate Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 90.b until the earlier of (1) the date that the Appropriate Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 70 (Record Review) requiring EPA to terminate such Work Takeover.

  91. Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANTS

  92. <u>Covenants Not to Sue by Settling Defendants</u>. Subject to the reservations in Paragraph 94, each Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, and this Consent Decree, including, but not limited to:

   a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112 or 113, or any other provision of law;

   b. any claims against the United States, including any department, agency, or instrumentality of the United States, under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Site, Past Response Costs, Future Response Costs, and this Consent Decree; or

   c. any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Massachusetts Constitution, the Tucker Act, 28 U.S.C. §1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

  93. Except as provided in Paragraph 99 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States brings a cause of action or issues an order pursuant to any of the reservations in Section XXI (Covenants by Plaintiff), other than in Paragraphs 89.a (claims for failure to meet a requirement of the Decree), 89.f (criminal liability), and 89.g (violations of federal/state law during or after implementation of the Work), but only to

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

94.     Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendants' plans, reports, other deliverables or activities.

95.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

## XXIII.   EFFECT OF SETTLEMENT; CONTRIBUTION

96.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

97.     The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are the Work, the Remedial Design, the Remedial Action, Past Response Costs, and Future Response Costs; provided, however, that if the United States exercises rights under the reservations in Section XXI (Covenants by Plaintiff), other than in Paragraphs 89.a (claims for failure to meet a requirement of the Decree), 89.f (criminal liability), or 89.g (violations of federal/state law during or after implementation of the Work), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions that are within the scope of the exercised reservation. Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

98.     Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States within ten days after service of the complaint on such Settling Defendant. In addition, each Settling Defendant shall notify the United States within ten days after service or receipt of any Motion for Summary Judgment and within ten days after receipt of any order from a court setting a case for trial.

99.     Res Judicata and Other Defenses. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiff).

## XXIV. ACCESS TO INFORMATION

100.     Each Settling Defendant shall provide to EPA, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at Operable Unit 4 of the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work. Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

101.     Business Confidential and Privileged Documents.

a.     Settling Defendants may assert business confidentiality claims covering part or all of the Records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b). Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies Records when they are submitted to EPA, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendants.

b.     Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide Plaintiff with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

portion only. Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.

        c.      No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States on the grounds that they are privileged or confidential.

102.    No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or associated with Operable Unit 4.

## XXV.   RETENTION OF RECORDS

103.    Until ten years after the Appropriate Settling Defendant's receipt of EPA's notification pursuant to Paragraph 52.b (Completion of the Work), each Appropriate Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to Operable Unit 4, provided, however, that each Appropriate Settling Defendant must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to Operable Unit 4. Each Appropriate Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above, all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work for which it is responsible pursuant to Schedule A, provided, however, that each Appropriate Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work for which it is responsible pursuant to Schedule A and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

104.    At the conclusion of this record retention period, the Appropriate Settling Defendant shall notify the United States at least 90 days prior to the destruction of any such Records, and, upon request by the United States, the Appropriate Settling Defendant shall deliver any such Records to EPA. The Appropriate Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Appropriate Settling Defendant asserts such a privilege, it shall provide Plaintiffs with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by the Appropriate Settling Defendant. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States in redacted form to mask the privileged portion only. The Appropriate Settling Defendant shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Appropriate Settling Defendant's

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

favor. However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

105.    The Appropriate Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or the filing of suit against it regarding Operable Unit 4 and that it has fully complied with any and all EPA requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXVI.  NOTICES AND SUBMISSIONS

106.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and Settling Defendants, respectively. Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

As to the United States:                Chief, Environmental Enforcement Section
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        P.O. Box 7611
                                        Washington, D.C.  20044-7611
                                        Re: DJ # 90-11-3-90/4

As to EPA:
                                        Don McElroy
                                        EPA Project Coordinator
                                        United States Environmental Protection Agency
                                        Region 1 Mail Code OSRR07-4
                                        5 Post Office Square – Suite 100
                                        Boston, MA 02109-3912

As to the Regional Financial          Regional Financial Management Officer
Management Officer:                    United States Environmental Protection Agency
                                        Region 1 Mail Code OARM16-1
                                        5 Post Office Square – Suite 100
                                        Boston, MA 02109-3912

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

As to MassDEP:                           Janet Waldron, State Project Manager
                                         Iron Horse Park Superfund Site-OU4
                                         Department of Environmental Protection
                                         Bureau of Waste Site Cleanup
                                         One Winter Street
                                         Boston, MA 02108

As to Boston and Maine Corporation:      Dana Banks
                                         Environmental Director
                                         Boston and Maine Corporation
                                         Iron Horse Park
                                         High Street
                                         North Billerica, MA 01862

                                         With a copy to:
                                         John Bashaw, Esq.
                                         Reid and Riege, p.c.
                                         One Financial Plaza
                                         Hartford, CT 06103

As to Massachusetts Bay                  Massachusetts Bay Transportation Authority
Transportation Authority:                Attn: Janis Kearney, Director of Environmental Compliance
                                         Ten Park Plaza, 6th Floor, Room 6720
                                         Boston, MA 02116-3974

                                         With a copy to:
                                         Julie Taylor, Esq.
                                         Noble, Wickersham & Heart LLP
                                         1280 Massachusetts Avenue
                                         Cambridge, MA 02128

## XXVII.   RETENTION OF JURISDICTION

107.    This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXVIII.      APPENDICES

108.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A"  is the ROD.

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

"Appendix B" is the SOW.

"Appendix C" is the map including Operable Unit 4.

"Appendix D" are the performance guarantees.

"Appendix E" are the amount of the performance guarantees.

"Appendix F" is the ESD.

In addition, Schedule A (listing each Appropriate Settling Defendant and identifying the portion of the Work for which each is responsible) is also attached to and incorporated into this Consent Decree.

## XXIX. COMMUNITY RELATIONS

109.    If requested by EPA, Settling Defendants shall participate in community relations activities pursuant to the community relations plan to be developed by EPA. EPA will determine the appropriate role for Settling Defendants under the plan. Settling Defendants shall also cooperate with EPA in providing information regarding the Work to the public. As requested by EPA, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings that may be held or sponsored by EPA to explain activities at or relating to the Site. Costs incurred by the United States under this Section, including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e), shall be considered Future Response Costs that Settling Defendants shall pay pursuant to Section XVI (Payments for Response Costs).

## XXX.   MODIFICATION

110.    Except as provided in Paragraph 15 (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and the Appropriate Settling Defendant, and shall be effective upon approval by the Court. Except as provided in Paragraph 15, non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and the Appropriate Settling Defendant. A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).

111.    Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

## XXXI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

112.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

113.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXII.   SIGNATORIES/SERVICE

114.    Each undersigned representative of a Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

115.    Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

116.    Each Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXIII.   FINAL JUDGMENT

117.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

118.    Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Settling Defendants.  The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 30 DAY OF April, 2015

_____

United States District Judge

50

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

Signature Page for Consent Decree regarding the Iron Horse Park Superfund Site, Operable Unit 4

**FOR THE UNITED STATES OF AMERICA**:

_10/6/14_
Date

Ellen M. Mahan
Deputy Section Chief

_10/6/14_
Date

Robert E. Maher Jr.
Assistant Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

Signature Page for Consent Decree regarding the Iron Horse Park Superfund Site, Operable Unit 4

9/25/14
Date

_Michael P. Gorgon, Acting for_

H. Curtis Spalding
Regional Administrator, Region 1
U.S. Environmental Protection Agency
5 Post Office Square – Suite 100
Boston, MA 02109-3912

9/23/14
Date

Susan Scott
Enforcement Counsel
U.S. Environmental Protection Agency
Region 1
5 Post Office Square – Suite 100
Boston, MA 02109-3912

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

Signature Page for Consent Decree regarding the Iron Horse Park Superfund Site,
Operable Unit 4

**FOR BOSTON AND MAINE CORPORATION**

_9/22/14_
Date

Name (print): _Robert Culbird_
Title: _Sr VP_
Address: _1700 Iron Horse Park_
_N. Billerica, MA 01862_

Agent Authorized to Accept Service
on Behalf of Above-signed Party:

Name (print): _Same_
Title:
Address:
Phone:
email:

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

Signature Page for Consent Decree regarding the Iron Horse Park Superfund Site, Operable Unit 4

                                        **FOR MASSACHUSETTS BAY**
                                        **TRANSPORTATION AUTHORITY**

September 19, 2014                       *Beverly A. Scott*
Date                                    Name:    Dr. Beverly A. Scott
                                        Title:    General Manager
                                        Address: MBTA
                                                 Ten Park Plaza, 3rd Floor, Room 3910
                                                 Boston, MA  02116-3974

Approved as to Form:

*Paige Scott Reed*
Paige Scott Reed
MBTA General Counsel
MBTA
Ten Park Plaza, 3rd Fl., Room 3510
Boston, MA  02116-3974

Agent Authorized to Accept Service      Name (print): Janis Kearney
on Behalf of Above-signed Party:        Title:  MBTA Director of Environmental Compliance
                                        Address:  MBTA
                                                  Ten Park Plaza, 6th Floor, Room 6720
                                                  Boston, MA  02116-3974
                                                  Phone:  617-222-1592
                                                  email:   jkearney@mbta.com

Iron Horse Park Superfund Site Operable Unit 4 RD/RA Consent Decree

## SCHEDULE A

Schedule A consists of a listing of each Appropriate Settling Defendant and identifies the portion of the Work for which each Appropriate Settling Defendant is responsible pursuant to this Consent Decree, the ROD, as modified by the ESD, the SOW and all documents submitted, approved or modified pursuant to this Consent Decree.

Boston and Maine Corporation shall perform that portion of the Work relating to groundwater.

Boston and Maine Corporation and the Massachusetts Bay Transportation Authority shall perform that portion of the Work relating to sediment.